IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 3, 2000 Session

## NORTHLAND INSURANCE CO. v. STATE OF TENNESSEE

Appeal by permission from the Court of Appeals, Middle Section
Tennessee Claims Commission for Davidson County
No. 94435    W. R. Baker, Commissioner

No. M1998-00307-SC-R11-CV - Filed December 8, 2000

The issue in this case is whether the Tennessee Claims Commission has subject matter jurisdiction over a claim against the State of Tennessee for contribution and indemnity. The jurisdiction of the Claims Commission is set forth in Tennessee Code Annotated section 9-8-307. That statute allows for suits against the State in the Claims Commission alleging that state employees have maintained a dangerous condition on a state maintained highway. The statute, however, does not mention contribution and indemnity suits as part of the Commission's jurisdiction. Because of the principle that a waiver of sovereign immunity must be clear and unmistakable, we conclude that the State has not consented to hear contribution and indemnity claims. We therefore affirm the Court of Appeals' decision dismissing the appellant's claim.

Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the
Court of Appeals Affirmed

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

James G. O'Kane, Knoxville, Tennessee, for the appellant, Northland Insurance Company.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Anthony D. Miller, Assistant Attorney General; Laura T. Kidwell, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

## OPINION

On March 14, 1998, Dion Deskovic became involved in an accident while driving his tractor-trailer on Interstate 40 in Putnam County. The accident caused the fuel tank of the tractor-trailer to spill diesel fuel onto the highway. Employees of the Tennessee Department of Transportation arrived and spread sand over the spilled fuel. Thereafter, Kenneth B. McDonald, while working for

Tennessee Walnut, Inc. and Grundy County Lumber Co., Inc. ("Walnut, Inc."), drove his truck and flatbed trailer up to the accident scene. Mr. McDonald attempted to avoid a collision with Mr. Deskovic's disabled tractor-trailer, which partially obstructed the highway, but he could not do so. Mr. McDonald's truck struck and killed Mr. Deskovic, who was standing outside his vehicle, and injured two wrecker operators, Robert L. Sheppard and Emmet McGuire, who were at the scene attending the disabled tractor-trailer.

Mr. Sheppard and his wife, Mr. McGuire and his wife, and the estate of Mr. Deskovic filed suit against Mr. McDonald and Walnut, Inc. Northland Insurance Co., the liability insurer of these defendants and the appellant before this Court, settled the cases by paying $150,000.00 to the estate of Mr. Deskovic, $845,000.00 to Mr. and Mrs. Sheppard, and $5,000.00 to Mr. and Mrs. McGuire.

After this settlement, Mr. McDonald and Walnut, Inc., filed a claim with the Tennessee Claims Commission seeking indemnity or contribution for the $1,000,000.00 paid by Northland, alleging that the State's negligence in failing to stop traffic caused the accident. In May 1992, Northland filed a motion in the Claims Commission to be substituted as plaintiff and real party in interest. The State did not oppose the motion and the Commission granted it.

For reasons that are not clear from the record, no further action was taken on this litigation for four years. Then, in March 1996, the State moved to dismiss the suit for lack of subject matter jurisdiction. The Claims Commission denied the motion. After trial, which occurred in October 1998, Commissioner W. R. Baker entered a final order. The total damages recoverable against the State were in excess of the $300,000.00 limit under Tennessee Code Annotated section 9-8-307(e), therefore, judgment was entered against the State of Tennessee in the amount of $300,000.00.

STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction falls under Tennessee Rule of Civil Procedure 12.02(1). The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. See Meighan v. U.S. Sprint Communications Co., 924 S.W.2d 632, 639 (Tenn. 1996); Standard Sur. & Casualty Co. v. Sloan, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Subject matter jurisdiction involves the nature of the cause of action and the relief sought, see Landers v. Jones, 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred on a court by constitutional or legislative act. See Kane v. Kane, 547 S.W.2d 559, 560 (Tenn. 1977); Computer Shoppe, Inc. v. State, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness. See Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Article I, section 17 of the Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." This constitutional provision reflects sovereign immunity, the notion that a sovereign governmental entity cannot be sued in its own courts without its consent. See State v. Cook, 171 Tenn. 605, 609, 106

S.W.2d 858, 860 (1937); Tenn. Code Ann. § 20-13-102 ("No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state...with a view to reach the state, its treasury, funds, or property..."). As a general interpretive matter, this Court has held that the principle of sovereign immunity requires that legislation authorizing suits against the state must provide for the state's consent in "plain, clear, and unmistakable" terms. Cook, 171 Tenn. at 611, 106 S.W.2d at 861; see also Beare Company v. Olsen, 711 S.W.2d 603, 605 (Tenn. 1986). We must therefore carefully analyze the statute granting jurisdiction to the Tennessee Claims Commission, which this Court has previously held creates a "sweeping procedure for filing monetary claims against the state." Hembree v. State, 925 S.W.2d 513, 516 (Tenn. 1996).

That statute, Tennessee Code Annotated section 9-8-307, begins by stating that the Commission has "exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of [state employees] falling within one (1) or more of the following categories..." Tenn. Code Ann. § 9-8-307(a)(1). One such category, which applies here, is "[d]angerous conditions on state maintained highways." Tenn. Code Ann. § 9-8-307(a)(1)(J). To maintain a suit based on this category, the claimant "must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures." Tenn. Code Ann. § 9-8-307(a)(1)(J). Also of relevance to this dispute is the following directive: "It is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Tenn. Code Ann. § 9-8-307(a)(3).

Reading these provisions together, Northland argues that subject matter jurisdiction is clear. This case involves state employees' negligent conduct regarding a dangerous condition on a state maintained highway; thus, it fits within one of the jurisdictional categories. Northland is seeking recovery from the state, based on its share of fault, which is a "monetary claim against the state." Northland avers that while contribution and indemnity claims are not specifically mentioned in the statute, they are nonetheless "monetary claims" which are directly connected to the underlying tort suit – and the statute refers to "all" monetary claims. Moreover, in case there is any doubt, the scope of jurisdiction should be "liberally construed."

Given the interpretive principle governing sovereign immunity stated above, and the statutory construction argument on which Northland relies, resolution of this dispute turns on the inference to be drawn from statutory silence. Northland argues that since the statute refers to "all" monetary claims there was no need – indeed it would be redundant – to mention contribution and indemnity. The State responds that since this is a question of sovereign immunity this Court should presume that the legislature must not have intended to consent to contribution and indemnity suits; if the legislature had consented it would have said so in the text of section 9-8-307.

We find that the Commission does not have subject matter jurisdiction to hear contribution and indemnity claims. The statute's liberal construction mandate allows a court to more broadly and expansively interpret the concepts and provisions within its text. For instance, in Hembree v. State this Court was presented with the question of how to interpret one of the jurisdictional categories

listed in section 9-8-307, specifically, the category allowing suits against the state involving "negligent care, custody and control of persons." Hembree, 925 S.W.2d at 516 (interpreting the provision that is now codified at 9-8-307(a)(1)(E)). The state contended that a claim for "negligent release" of a patient from a state controlled mental health institute did not fall into this category. Id. The Court disagreed, holding that "care, custody and control" jurisdiction should be read to cover the state's decision to release a patient from custody. Id. at 517-18. Hembree illustrates that the jurisdictional categories in section 9-8-307 should not be interpreted narrowly. A liberal construction of an existing category, however, is a different proposition than a construction creating a *new* category.

Northland argues that contribution and indemnity claims are intimately related to the underlying tort suit which, in this case, the Commission would have had subject matter jurisdiction to hear. Thus, the category of "dangerous highway condition" may be read to include Northland's claim against the State; no new jurisdictional category need be created. While contribution and indemnity claims are, of course, linked to the underlying tort, they are separate and independent remedies under Tennessee law. See Butler v. Trentham, 224 Tenn. 528, 534, 458 S.W.2d 13, 15 (1970) ("[W]here [contribution] is allowed between joint tortfeasors, it does not sound in and is not based on tort. It rests rather on principles of equity and natural justice."); Uniform Contribution Among Tort-Feasors Act, Tenn. Code Ann. § 29-11-101, et seq. (providing a contribution remedy that is distinct from the underlying tort remedy). A plaintiff's suit against an alleged tortfeasor seeks redress for harm caused by that tortfeasor, in this case because of the tortfeasor's negligence. Contribution and indemnity, however, are remedies a party seeks after having been found liable for tortious conduct, designed to recover all or part of the loss from another responsible party. See Owens v. Truckstops of America, 915 S.W.2d 420, 433 (Tenn. 1996) ("[C]ontribution shifts part of the loss from one party to another [and] traditional implied indemnity shifts the entire loss from the party found liable to a party who should bear the entire loss.").[1] Thus, although Northland's desired contribution suit against the State is related to Mr. Sheppard's, Mr. McGuire's and the estate of Mr. Deskovic's suit against Mr. McDonald and Walnut, Inc., the two suits are nonetheless distinct.

Recognition that contribution and indemnity claims are not merely expansions of the underlying tort suit on which they are based, but rather different remedies which exist for different purposes, resolves this dispute. As noted, legislation authorizing suits against the state must provide for the state's consent in "plain, clear, and unmistakable" terms. Cook, 171 Tenn. at 611, 106 S.W.2d at 861. No such clarity is present in section 9-8-307. A decision from this Court interpreting this statute to include Northland's claim within the Commission's subject matter jurisdiction would be tantamount to judicially creating a waiver of sovereign immunity to which the State has not actually consented. We decline to adopt this interpretation and therefore affirm the Court of Appeals.

_____

[1]To avoid confusion, we note that the contribution and indemnity claims at issue in this case were initiated prior to our decision in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992). However, because of our resolution o f the jurisdictional issue presented here, it is unnecessary for us to determine how comparative fault principles affect the availability of contribution and indemnity in this case.

CONCLUSION

Based on our interpretation of Tennessee Code Annotated section 9-8-307, we hold that the Tennessee Claims Commission does not have subject matter jurisdiction to hear contribution and indemnity claims. The decision of the Court of Appeals dismissing Northland's claim against the State is affirmed.

_____
FRANK F. DROWOTA, III, JUSTICE